

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2007

# Tode v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2741

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"Tode v. Atty Gen USA" (2007). *2007 Decisions.* Paper 794.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/794

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2741
_____

BGS NGR BAMBANG WISAGENI TODE,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A96-259-805)
Immigration Judge:  Donald Vincent Ferlise
_____

Submitted Under Third Circuit LAR 34.1(a)
June 19, 2007

Before:  McKEE, FISHER and CHAGARES, *Circuit Judges*.

(Filed: July 10, 2007 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Bgs Ngr Bambang Wisageni Tode ("Wisageni")[1] petitions for review of the final decision of the Board of Immigration Appeals ("BIA") ordering his removal from the United States. He claims that the BIA, in affirming the decision of the Immigration Judge ("IJ"), erred by denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We disagree and, for the reasons set forth below, will dismiss the petition in part and deny it in part.

I.

As we write exclusively for the parties, who are familiar with the factual and procedural history of this case, we will set forth only those facts necessary to our analysis. Wisageni is a native and citizen of Indonesia, of Chinese ethnicity and Hindu religion. He entered the United States on a visitor's visa on June 13, 2000, and remained in the United States after the visa expired. He was placed in removal proceedings on March 31, 2003, when the Department of Homeland Security issued a Notice to Appear. At his initial appearance in front of the IJ, Wisageni conceded removability, but made applications for asylum, withholding of removal, and protection under the CAT.

At a subsequent hearing, Wisageni testified regarding his life in Indonesia prior to 2000. Wisageni was raised on Lombok Island, Indonesia, where he lived with his parents

---

[1]Wisageni is the petitioner's surname. Therefore, that is how we will refer to him throughout.

until 1997. In July 1997, riots broke out on Lombok, including burning and looting. During those riots, Wisageni was beaten with a bamboo stick by one member of the mob, and his family's store and home were burned. Wisageni indicated that these riots were motivated by political and religious reasons as, two months prior to the riots, the temple where he worshiped had been doused with cow blood[2] and a golden statue from the temple had been stolen.

The day following the riots, Wisageni moved from Lombok to Malang, Indonesia, where he lived for three years without any further incident. However, he indicated that he was on an "enemy" list and feared that he would be killed if he returned to Lombok. In September 1999, Wisageni traveled to Japan, voluntarily returning to Indonesia after two months.

Following Wisageni's testimony, the IJ issued an oral decision denying Wisageni's applications. Initially, he denied the asylum application as untimely, finding that Wisageni had been in the United States since June 2000, but had not applied for asylum until February 13, 2003, almost three years later. In addition, the IJ made an adverse credibility determination, stating that he found much of Wisageni's testimony contradictory. However, the IJ further stated that, even if he found Wisageni credible and

---

[2]The cow is a sacred animal in the Hindu religion, and the slaughter of a cow is forbidden. *See* Nihal Mathur, *The Gentle Cow*, *available at* http://www.judypat.com/india/cow.htm.

Wisageni's asylum application had been timely, all relief would still have to be denied as Wisageni failed to prove any past persecution based on a protected ground.

Wisageni filed a timely appeal with the BIA. In its brief decision, the BIA found that the IJ was correct to deny the application for asylum as untimely filed. In addition, although it found that the IJ's adverse credibility determination was not supported by substantial evidence, the BIA agreed that even if everything Wisageni said was true, he did not provide sufficient evidence of past persecution, a well-founded fear of future persecution or fear of torture upon return to Indonesia.

Wisageni timely filed this petition for review.

## II.

We have jurisdiction to review a final order of removal from the BIA pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA has adopted a portion of the IJ's decision, we review the decisions of both the BIA and the IJ. *Shehu v. Att'y Gen.*, 482 F.3d 652, 657 (3d Cir. 2007). Our review is for substantial evidence, upholding the decision of the BIA and the IJ if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (internal quotation marks and citations omitted). "[T]he BIA's [and IJ's] finding[s] must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

However, we lack jurisdiction to review Wisageni's asylum claim. The IJ and BIA properly found that Wisageni failed to file an application for asylum within one year of his last entry into the United States. *See* 8 U.S.C. § 1158(a)(2)(B). We may not review their determination that Wisageni failed to show extraordinary circumstances relating to his delay in filing. 8 U.S.C. § 1158(a)(3) ("[N]o court shall have jurisdiction to review any determination by the Attorney General under paragraph (2) [including an extraordinary circumstances determination] . . . ."); *Tarrawally v. Ashcroft*, 338 F.3d 180, 185-86 (3d Cir. 2003) (holding that we are jurisdictionally barred from reviewing the IJ's or BIA's determination regarding extraordinary circumstances that led to delayed filing of an asylum application). Therefore, our review is limited to Wisageni's applications for withholding of removal and protection under the CAT.

III.

Pursuant to the Immigration and Nationality Act ("INA"), the Attorney General may not remove an alien to his country of origin if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). In order to qualify for withholding of removal under § 1231, an alien must show the threat by a clear probability. *INS v. Stevic*, 467 U.S. 407, 430 (1984). "A clear probability means 'more likely than not.'" *Tarrawally*, 338 F.3d at 186 (quoting *Stevic*, 467 U.S. at 429-30.)

5

The BIA's decision that Wisageni failed to show by a clear probability that his life or freedom would be threatened is supported by substantial evidence. Wisageni's application for withholding of removal rests on the single incident that occurred during the 1997 riots on Lombok. At that time, Wisageni was attacked by a member of the rioting mob and his family's home and business were destroyed. However, this single violent experience during generalized lawlessness is not sufficient to prove that Wisageni's life or freedom would be threatened if he returned to his country of origin. *See Konan v. Att'y Gen.*, 432 F.3d 497, 506 (3d Cir. 2005) (holding that violence during generalized unrest is insufficient to show past persecution). Further undercutting Wisageni's claim is the fact that, following the riot incident, Wisageni relocated and lived for three years without incident, returning to Indonesia by choice following a two-month sojourn to Japan. The single incident of violence followed by a three-year period where Wisageni lived peacefully is simply not sufficient to prove past persecution or fear for his life and liberty upon return to Indonesia. *See*, *e.g.*, *Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005).

Wisageni's claim under the CAT must also fail. In order to receive protection under the CAT, a petitioner must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The torture must be inflicted by the government or with the consent or acquiescence of a public official. *Id.* § 208.18(a)(1). Wisageni has provided no evidence

6

that would indicate that he would be tortured by the Indonesian government if returned to Indonesia or that the Indonesian government would acquiesce in his torture.

In short, Wisageni's applications for withholding of removal and protection under the CAT were properly denied, and we lack jurisdiction to review his asylum claim. Therefore, we will deny his petition for review of the BIA's denial of his applications for withholding of removal and protection under the CAT, and dismiss his petition for review of the asylum claim for lack of jurisdiction.